No. 08-2216

In the
**UNITED STATED COURT OF APPEALS
for the Sixth Circuit**

KELLY WILLIAMS,
*Plaintiff-Appellant*

v.

Reliance Standard Life Insurance Company,
Defendant-Appellee

BRIEF OF APPELLEE

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Joshua Bachrach
Independence Square West
The Curtis Center, Suite 1130 East
Philadelphia, PA 19106
Ph: 215.627.6900
Fx: 215.627.2665
Em: Joshua.Bachrach@wilsonelser.com

*Attorneys for Defendant-Appellee
Reliance Standard Life Insurance Company*

# DISCLOSURE OF CORPORATE
## AFFILIATIONS  AND FINANCIAL INTEREST


Pursuant to 6th Cir. R. 26.1, **Reliance Standard Life Insurance Company** makes the following disclosures:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?


        **YES.** Delphi Financial Group, Inc.


2.      Is there a publicly owned corporation not a party to the appeal that has a financial interest in the outcome?


        **YES.** Delphi Financial Group, Inc.


                         /s/ Joshua Bachrach_____
                         Joshua Bachrach, Esquire


                         Date: May 14, 2009_____

# TABLE OF CONTENTS

Page

DISCLOSURE OF CORPORATE AFFILIATIONS
AND FINANCIAL INTEREST...................................................... i

TABLE OF CONTENTS............................................................... ii

TABLE OF AUTHORITIES ...................................................... iii

STATEMENT REGARDING ORAL ARGUMENT........................... 1

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION.................................................... 2

STATEMENT OF THE ISSUES.................................................... 3

STATEMENT OF THE CASE...................................................... 4

STATEMENT OF THE FACTS.................................................... 6

SUMMARY OF ARGUMENT...................................................... 11

APPELLATE COURT STANDARD OF REVIEW........................... 13

ARGUMENT.......................................................................... 14

    A.    The District Court Decision...................................... 14

    B.    The Denial of Benefits Was Not Arbitrary and Capricious... 15

CONCLUSION........................................................................ 22

CERTIFICATE OF COMPLIANCE............................................... 24

CERTIFICATE OF SERVICE...................................................... 25

DESIGNATION OF RELEVANT DISTRICT
COURT DOCUMENTS............................................................. 26

# TABLE OF AUTHORITIES

**Federal Cases**

*Baker v. United Mine Workers of Am. Health Ret. Funds,*
929 F.2d 1140 (6th Cir. 1991)……………………………………...22

*Bennett v. Kemper Nat. Servs., Inc.,*
514 F.3d 547 (6th Cir. 2008)………………………………………13

*Glenn v. MetLife,*
461 F.3d 660 (6th Cir. 2006),
*aff'd* 528 U.S. __, 128 S.Ct. 2343 (2008)……………………...13, 14

*Kaus v. Standard Ins. Co.,*
985 F.Supp. 1277 (Kan. 1997),
*aff'd* 1998 WL 778055 (10th Cir. 1998) …………………………...21

*Lococo v. Medical Savings Ins. Co.,*
530 F.3d 442 (6th Cir. 2008)………………………………………..19, 20

*Whitaker v. Hartford Life & Accident Ins. Co.,*
404 F.3d 947 (6th Cir. 2005)……………………………………...22

**Federal Statutes and Rules**

28 U.S.C. §1291…………………………………………………… 2

28 U.S.C. § 1331…………………………………………………… 2

29 U.S.C. § 1132(e)………………………………………………..... 2

Rule of Appellate Procedure 4(a)…………………………………..... 2

Fed. R. App. 32(a)(7)(B)……………………………………………24

Fed. R. App. P. 32(a)(6)…………………………………………....24

Fed. R. App. P. 32(a)(7)(B)(iii)……………………………....…… 24

Fed R. App. R. 32(a)(5)...……………………………………………24

## STATEMENT REGARDGING ORAL ARGUMENT

Oral argument is not necessary in this appeal as the facts and the legal arguments are adequately presented in the parties' submissions to this Court.

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The district court and this Court have subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, pertaining to federal questions jurisdiction, and 29 U.S.C. § 1132(e), the Employee Retirement Income Security Act (ERISA), as this lawsuit involves a claim for disability benefits under an employee welfare benefit plan. (R.1, Complaint).

After the parties filed motions for judgment, on August 28, 2008, the district court granted the motion of Reliance Standard and denied Ms. Williams' motion. As the judgment disposed of all claims, it is a final judgment that may be appealed pursuant to 28 U.S.C. § 1291 and Federal Rule of Appellate Procedure 4(a).

## STATEMENT OF THE ISSUES

I.      Whether the district court correctly entered judgment in favor of Reliance Standard when the Plan excludes benefits for disabilities that are caused by, contributed to by or resulting from a pre-existing condition, Ms. Williams consulted with a doctor and was prescribed medication for depression during the treatment-free period and the disability claim is based on depression.

# STATEMENT OF THE CASE

Ms. Williams filed a lawsuit against Reliance Standard in Wayne County Circuit Court on December 11, 2007, after her clam for benefits under the Plan was denied. (R. 1). The original complaint asserted state law claims against Reliance Standard. (R. 1). Reliance Standard timely removed the case to the United States District Court for the Eastern District of Michigan and also filed a motion to dismiss the state law claims based on ERISA preemption. (R. 1, 2).

Ms. Williams initially disputed the applicability of ERISA to her claims and filed several pleadings challenging the removal and the motion to dismiss, including a motion to remand the case to state court. (R. 3, 6, 7). On March 5, 2008, Judge Victoria A. Roberts denied the motion to remand and granted Ms. Williams leave to file an amended complaint. (R. 10). An amended complaint was filed by Ms. Williams on March 9, 2008 and Reliance Standard filed its answer on March 24, 2008. (R. 13, 14).

On April 17, 2008, Reliance Standard filed in the district court the Administrative Record from the claim proceedings. (R. 16). Thereafter, the court issued a scheduling order requiring the filing of dispositive motions by July 10, 2008. (R. 17). Both parties filed motions for summary judgment and response briefs in accordance with the scheduling order. (R. 18, 19, 20,

21, 22).  On August 28, 2008, Judge Roberts granted Reliance Standard's motion, denied the motion of Ms. Williams and entered judgment in favor of defendant.  (R. 23, 24).  Ms. Williams timely filed a notice of appeal to this Court on September 18, 2008.  (R. 25).

# STATEMENT OF THE FACTS

Quicken Loans offered long term disability coverage to its employees as part of its employee welfare benefit plan. Reliance Standard is the insurer of the Plan as well as the delegated decision-maker. (R. 16, p. 24, 36). The Plan includes a pre-existing condition limitation that applies to a claimant who has not been insured under the Plan for 12 consecutive months. (R. 16, p. 44). A "pre-existing condition" is defined as a "Sickness or Injury for which the Insured received medical treatment, consultation, care or services, including diagnostic procedures or took prescribed drugs or medicines during the three months immediately prior to the Insured's effective date of insurance." (R. 16, p. 31).

Ms. Williams began working for Quicken Loans as a Mortgage Banker on November 20, 2005. (R. 16, p. 6). Less than four months later, on March 9, 2006, Ms. Williams stopped working. (R. 16, p. 3, 6). Because Ms. Williams worked for less than 12 months before claiming disability, Reliance Standard reviewed her eligibility under the pre-existing conditions limitation.

On her disability application for benefits, Ms. Williams stated that she was unable to work due to "Panic Attacks, Depression." (R. 16, p. 3). Ms. Williams explained that she first treated for these symptoms in March 1999,

6

and that the symptoms had "been recurring for several years." (R. 16, p. 3). For purposes of coverage under the Reliance Standard policy, the question was whether Ms. Williams treated for these conditions during the treatment-free period, which ran from September 1 through December 1, 2005. (R. 16, p. 6, 29). She did.

Ms. Williams was seen by Dr. Phillip Fisher on September 19, 2005 with complaints of "depression and anxiety." (R. 16, p. 125). This date falls within the 90 day treatment-free period. At the time of the visit, Dr. Fisher prescribed Zoloft. (R. 16, p. 125). Zoloft was again prescribed during the treatment-free period on November 5, 2005. (R. 16, p. 209). On a medical history questionnaire completed by Ms. Williams after she submitted her disability claim, she acknowledged treating for depression and anxiety between September 1 and November 30, 2005, and being prescribed Zoloft during that time. (R. 16, p. 224).

After claiming disability, Ms. Williams primarily treated with Drs. Lazar and Farooq. On or about May 19, 2006, Dr. Lazar completed a claim form in which he identified Ms. Williams' primary diagnosis as "major depression-recurrent." (R. 16, p. 240). Dr. Farooq also completed a claim form in connection with the disability claim. Dr. Farooq identified Ms.

Williams' symptoms as depression and anxiety and also listed a diagnosis of bipolar disorder. (R. 16, p. 230).

After she stopped working, Ms. Williams received treatment on several occasions at St. Mary Mercy Hospital due to her mental health. Ms. Williams was hospitalized between May 17 and May 19, 2006 due to complaints of depression and anxiety. (R. 16, p. 146). During this hospitalization, Dr. Farooq discussed Ms. Williams' long history of depression. (R. 16, p. 146). Ms. Williams returned to St. Mary Mercy Hospital on August 18, 2006 with a chief complaint of "depression, suicidal thoughts." (R. 16, p. 137).

Based on the medical records described above and the language in the policy, Reliance Standard concluded that Ms. Williams "took prescribed drugs or medicine during the three months immediately prior to [her] effective date of insurance." (R. 16, p. 194-196). Because the treatment and medication was for the same condition on which the disability claim is based, Reliance Standard concluded that Ms. Williams was not eligible for benefits under the Plan. (R. 16, p. 194-196). Accordingly, a denial letter was sent.

Ms. Williams disagreed with Reliance Standard's denial of the claim and appealed that decision on August 15, 2006. (R. 16, p. 187-188). In her

appeal, Ms. Williams did not dispute that she treated for depression and anxiety both during the treatment-free period and after she stopped working. However, Ms. Williams argued that bipolar disorder, which was diagnosed after she stopped working, is a different condition than depression. This argument overlooks the fact that her doctors continued to identify depression as the disabling condition *after* Ms. Williams stopped working.

To further evaluate the claim during the appeal, Reliance Standard sent the medical records to Kevin Hayes, M.D., a psychiatrist, for an independent evaluation. (R. 16, p. 68-76). As confirmed in the hospital records discussed above, Dr. Hayes identified Ms. Williams' main symptoms as anxiety and depression. (R. 16, p. 71). Significantly, Dr. Hayes explained that even if Ms. Williams was previously diagnosed with unipolar depression, once she had a manic episode and qualified for the diagnosis of bipolar disorder, all previous episodes of depression are re-categorized as bipolar disorder with depressive episode. (R. 16, p. AR 71). Dr. Hayes also confirmed that Ms. Williams treated for bipolar depression with Zoloft. (R. 16, p. 71). This is the same medication that was prescribed for Ms. Williams' depression during the treatment-free period. (R. 16, p. 125, 209).

On November 17, 2006, Reliance Standard upheld its decision to discontinue benefits based on the pre-existing condition limitation in the policy. (R. 16, p. 57-61). The appeal denial letter specifically referenced Ms. Williams' treatment and receipt of medication during the three months before her effective date of insurance for the same condition on which she based her disability claim. Accordingly, her disability was "caused by, contributed to by, or resulting from" a pre-existing condition and she was ineligible for benefits under the Plan. (R. 16, p. 60). Ms. Williams responded to the final decision on her claim by filing this lawsuit.

# SUMMARY OF ARGUMENT

The Plan under which Ms. Williams is making her claim provides that benefits are not payable if the participant "received medical treatment, consultation, care or services, including diagnostic procedures or took prescribed drugs or medicines during the three months immediately prior to the Insured's effective date of insurance." Ms. Williams bases her disability claim on depression and anxiety. During the three months before her effective date of coverage, Ms. was seen by her doctor for complaints of "depression and anxiety." Therefore, under the plain language in the policy, Ms. Williams did not qualify for disability benefits.

Ms. Williams argues that the pre-existing limitation should not apply to her claim because one of her doctors listed bipolar disorder as her diagnosis after she stopped working. However, the same doctor and numerous treatment records describe the disabling symptoms as depression and anxiety.

Contrary to Ms. Williams' argument, there does not need to be a specific diagnosis of the condition during the treatment-free period for the limitation to apply. The Sixth Circuit has recognized that for a pre-existing condition limitation to apply, it "require[s] merely that there be indications of the particular condition, not that there be a definite diagnosis." Here,

11

however, there is a definite diagnosis of the same condition - depression. At the very least, the depression for which Ms. Williams received treatment prior to her effective date of coverage provided an indication that she was suffering from bipolar disorder. Therefore, the denial of the benefit claim cannot be considered arbitrary and capricious and the judgment of the district court should be affirmed.

# APPELLATE COURT STANDARD OF REVIEW

The Court of Appeals reviews *de novo* a district court's judgment on the administrative record. *Bennett v. Kemper Nat. Servs., Inc.,* 514 F.3d 547, 552 (6th Cir. 2008). Where the benefit plan gives the decision-maker discretionary authority to determine eligibility for benefits, the denial of benefits will be reviewed by the appellate court under the deferential arbitrary and capricious standard. *Id.* Under the arbitrary and capricious standard, the plan's decision will be upheld "if it is the result of a deliberate, principled reasoning and if it is supported by substantial evidence." *Id* (quoting *Glenn v. MetLife,* 461 F.3d 660, 666 (6th Cir. 2006), *aff'd* 528 U.S. __, 128 S.Ct. 2343 (2008)). The Plan in this case includes an explicit grant of discretionary authority to Reliance Standard. Accordingly, this Court's review is under the arbitrary and capricious standard.

Where, as in this case, the same entity both insures the plan and makes eligibility decisions, they are deemed to be operating under a conflict of interest. *Glenn,* 128 S.Ct. at 2346. As instructed by the Supreme Court in *Glenn,* the conflict of interest does not alter the standard of review. The decision is still reviewed for abuse of discretion. However, the conflict is weighed as factor in determining whether the denial was arbitrary and capricious. *Glenn,* 128 S.Ct. at 2350-51.

In *Glenn*, the Supreme Court described the weight to be given a conflict of interest as follows:

> In such instances, any one factor will act as tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending on the tie-breaking factor's inherent or case-specific importance.

*Glenn*, 128 S.Ct. at 2351. Thus, it is only when the remaining factors are close that the conflict of interest acts a "tiebreaker" in favor of the claimant. Here, the facts are not close.

## ARGUMENT

### A.    The District Court Decision

Based on the grant of discretion to Reliance Standard, the district court reviewed the denial of benefits under the arbitrary and capricious standard. (R. 23). However, the Court also considered Reliance Standard's conflict of interest. (R. 23). The district court observed that during the treatment-free period, Ms. Williams was seen by her doctor for depression and anxiety and was prescribed Zoloft. (R. 23). The district court also noted that on her application for disability benefits, Ms. Williams stated that she was unable to work *due to depression*. (R. 23). As recognized by the district court, "[t]his admission directly linked Williams current condition to

a pre-existing condition and supports the Plan Administrator's conclusion." (R. 23).

Judge Roberts also considered Ms. Williams' argument that the pre-existing condition limitation did not apply because her doctor later provided a diagnosis of bipolar disorder. The district court correctly observed that Ms. Williams' argument "ignores the fact that depression is part and parcel of a diagnosis or bipolar disorder." (R. 23). Quoting from a medical review performed by Dr. Hayes, the Court recognized that Ms. Williams' "core symptoms" of anxiety and depression "are common symptoms of either unipolar of bipolar depression." (R. 23). Moreover, Ms. Williams' own doctor identified depression and anxiety as symptoms of Ms. Williams' bipolar disorder. Therefore, the district court correctly concluded that Ms. Williams' bipolar disorder was "caused by, contributed to by, or result[ed] from" depression which is a pre-existing condition. (R. 23). Therefore, the Court correctly concluded that the denial of benefits was not arbitrary and capricious.

**B.      The Denial of Benefits Was Not Arbitrary and Capricious**

In her *pro se* brief, Ms. Williams states a number of legal conclusions in her request for this Court to reverse the judgment of the district court. In essence, plaintiff argues that the pre-existing condition limitation does not

15

apply because her doctor listed a diagnosis of bipolar disorder after she stopped working but she was diagnosed with depression during the treatment-free period. Neither the language in the policy, the law, nor the treatment records supports Ms. Williams' position.

There is no dispute that the pre-existing condition limitation potentially applies to Ms. Williams' claim because she worked for the policyholder for less than one year. As a result, benefits are not paid for a disability that is "caused by, contributed to by, or result[s] from a pre-existing condition." (R. 16, p. 44). The policy defines the term "pre-existing condition" as follows:

> "Pre-existing Condition" means any Sickness or Injury for which the Insured received medical treatment, consultation, care or services, including diagnostic procedures, or took prescribed drugs or medicine, during the three months immediately prior to the Insured's effective date of insurance.

(R. 16, p. 31). Ms. Williams became insured under the Plan on December 1, 2005. Accordingly, the three-month treatment free period for her claim ran from September 1 through December 1, 2005. During this time, Ms. Williams received treatment for the same condition on which she based her disability claim.

On September 19, 2005, Ms. Williams was seen by Dr. Fisher for complaints of anxiety and depression. (R. 16, p. 125). During that visit, she

was prescribed Zoloft. (R. 16, p. 125). Also during the treatment free period, on November 5, 2005, Ms. Williams was prescribed a 90-day supply of Zoloft. (R. 16, p. 209). Anxiety and depression are also identified as the cause of Ms. Williams' inability to work and are the bases for her disability claim.

On her claim form, Ms. Williams identified her disabling symptoms as "panic attacks, depression." (R. 16, p. 3). She further noted that the symptoms had been "recurring for several years." (R. 16, p. 3). Ms. Williams treated primarily with Drs. Lazar and Farooq after she stopped working. On a disability claim form completed by Dr. Lazar on May 19, 2006, he identified Ms. Williams' "primary diagnosis" as "major depression-recurrent." (R. 16, p. 240). Dr. Farooq also identified Ms. Williams' symptoms as "depression, anxiety." (R. 16, p. 230). In addition, he listed a diagnosis of bipolar disorder. Significantly, Dr. Farooq listed Zoloft as one of the medications prescribed to Ms. Williams. (R. 16, p. 230). This is the same medication that Ms. Williams was taking during the treatment-free period. (R. 16, p. 125, 224).

Ms. Williams received treatment from Dr. Farooq at St. Mary Mercy Hospital on a few occasions after she stopped working. She reported to the emergency room on May 17, 2006 complaining that she was "feeling

increasingly depressed and anxious." (R. 16, p. 146). She explained that her "depression was getting worse" and that she also had "increased anxiety." (146). During the hospitalization, Ms. Williams told the doctor that she had a history of "manic and hypomanic episodes in the past." (R. 16, p. 147). This admission cuts against Ms. Williams' argument that she was suffering from a new, different condition after she stopped working as bipolar disorder is also known as *manic depression*.

Also of significance is Dr. Farooq's diagnosis of "bipolar disorder, *depressive episode*." (R. 16, p. 146). Ms. Williams was again seen at St. Mary Mercy Hospital on August 18, 2006. (R. 16, p. 137). Her "chief complaint" was "depression, suicidal thoughts." (R. 16, p. 137). The doctor also listed under impression "depression with suicidal thoughts." (R. 16, p. 138). Thus, Ms. Williams continued to carry the diagnosis of depression after she stopped working and this is the same depression for which she treated before she became eligible for coverage under the disability Plan.

There is no medical opinion in this file that the depression and anxiety Ms. Williams suffered from and treated for during the treatment-free period was any different from the anxiety and depression that forced her to stop working. There is no medical evidence that the bipolar disorder that was identified after Ms. Williams stopped working was not present during the

treatment-free period. As explained by Dr. Hayes, and not contradicted anywhere in the record, even if a patient is diagnosed with unipolar depression, once the patient has a manic episode and qualifies for the diagnosis of bipolar disorder, "all previous depressive episodes are re-characterized as bipolar disorder-depressive episodes." (R. 16, p. 71). This confirms that Ms. Williams was suffering from and treating for the same condition on which she bases her disability claim during the treatment free period.

The sole argument of Ms. Williams in favor of coverage is that the pre-existing condition limitation should not apply because no doctor specifically identified her diagnosis as bipolar disorder during the treatment-free period. This argument ignores the fact that during both periods, depression was specifically identified. In fact, it is clear from the medical records that the depression is *the* disabling symptom. Plaintiff's argument that a specific diagnosis is required is also contrary to the law.

Contrary to Ms. Williams' position, the Sixth Circuit has held that there does not need to be a specific diagnosis for a pre-existing condition limitation to apply. *See Lococo v. Medical Savings Ins. Co.,* 530 F.3d 442 (6th Cir. 2008). *Lococo* is a non-ERISA case in which the Court reviewed eligibility under the policy without any deference to the insurer. The claim

in *Lococo* involved the applicability of a pre-existing condition limitation under a medical benefit plan. The plaintiff argued that the pre-existing condition limitation should not apply to her claim because "the specific illness must be diagnosed prior to the effective date of coverage." *Lococo*, 530 F.3d at 447. The Sixth Circuit rejected this argument. This Court stated that the plaintiff "points to no cases holding that a condition may be considered 'pre-existing' only if it was definitively diagnosed prior to the policy date." *Id*.

Referring to state law, the Court in *Lococo* held that for a pre-existing condition limitation to apply it "require[s] merely that there be indications of the particular condition, not that there be a definite diagnosis." *Id*. The Sixth Circuit stated that courts have recognized that a pre-existing condition exclusion applies if there are symptoms indicative of the condition *or* a specific diagnosis. *Id*. Those facts are present in this case.

Applying the rationale in *Lococo* to the facts of this claim, Ms. Williams' argument fails. First, there *is* a specific diagnosis of depression during both the treatment-free period and as the basis for the disability claim. There also can be no dispute that depression is a symptom indicative of the condition bipolar disorder. Therefore, the limitation applies under either approach stated by the Sixth Circuit.

The facts in this claim are similar to *Kaus v. Standard Ins. Co.,* 985 F. Supp. 1277 (Kan. 1997), *aff'd* 1998 WL 778055 (10th Cir. 1998). The claimant in *Kaus* was seen by his doctor during the treatment-free period complaining of depression and was prescribed Valium. *Kaus* 985 F. Supp. at 1280. After the claimant stopped working, the doctor listed the patient's diagnosis as "major depression." Based on the earlier reference to "depression" and based on the pre-existing condition limitation, the Court held that is was not arbitrary and capricious to deny the claim for benefits based on "major depression." On appeal, the Tenth Circuit affirmed, stating that a claimant whose doctor prescribed Valium and noted depression had a pre-existing condition of major depression. *Kaus,* 1998 WL 778055, 5.

Ms. Williams' condition is no different. Her doctors continued to identify depression as her disabling condition. While the diagnosis of bipolar disorder was later added, this is irrelevant. Just as the major depression was the same as the previously treated depression in *Kaus,* the bipolar disorder/manic depression is the same depression that Ms. Williams treated for in this case.

Under the arbitrary and capricious standard that applies in this case, the Court does not decide which side it believes is right, but only whether there is substantial evidence supporting a reasonable decision by the Plan.

*Baker v. United Mine Workers of Am. Health Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). A plan's decision "must be upheld if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Whitaker v. Hartford Life & Accident Ins. Co.,* 404 F.3d 947, 949 (6th Cir. 2005).

Based on these standards, Reliance Standard's denial of the claim should be upheld. There is no real dispute that plaintiff treated for the same condition – depression – during the treatment-free period and after she stopped working. Each of her doctors identified depression as preventing Ms. Williams from working. Therefore, under the plain language in the Plan, this disability was caused by, contributed to by, and resulted from a pre-existing condition. While Reliance Standard has discretion under the policy in this case, this is not a case in which the deferential standard is needed for the Court to rule in defendant's favor. Under any standard, the denial of this benefit claim based on the limitation cannot be considered wrong.

## CONCLUSION

For the reasons stated in this brief, Reliance Standard Life Insurance Company respectfully request that the Court affirm the judgment of the district court upholding the benefit determination.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

/s/ Joshua Bachrach
Joshua Bachrach
Independence Square West
The Curtis Center, Suite 1130 East
Philadelphia, PA 19106
Ph: 215.627.6900
Fx: 215.627.2665
Em:
Joshua.Bachrach@wilsonelser.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because this brief contains 3,788 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. R. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in 14-point Times New Roman.

  /s/ Joshua Bachrach
Joshua Bachrach, Esquire

Date: May 14, 2009

## CERTIFCATE OF SERVICE

I certify that on the 14th Day of May, 2009, pursuant to 6 Cir. R. 25, I

caused the foregoing brief to be served on Appellant Kelly Williams, who is

*pro se*, by sending a copy to her via overnight delivery at the following

address:

> Kelly Williams
> 26666 Monticello
> Inkster, MI 48141

> /s/ Joshua Bachrach
> Joshua Bachrach, Esquire

> Date: May 14, 2009

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

The following filings from the district court's record are relevant documents:

| Date | Record Entry No. | Description of Entry |
|------|------------------|----------------------|
| April 17, 2008 | 16 | Administrative Record |
| August 28, 2008 | 23 | Order Granting Summary Judgment to Defendant |
| August 28, 2008 | 24 | Judgment for Defendant |